UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ASHKHEN THORNTON,<br>    Plaintiff,<br><br>v.<br><br>MACY'S RETAIL HOLDINGS, INC.,<br>BETTY DePIERRE, OMAR REYES,<br>and CATHY TIKELLIS,<br>    Defendants. | Civil No. 20-40045-DHH |

**Report and Recommendation**
**March 5, 2021**

Hennessy, M.J.

This matter comes before the Court on the motions of Defendants Macy's Retail Holdings, Inc. ("Macy's"), Betty DePierre ("DePierre"), and Cathy Tikellis ("Tikellis" and collectively "Defendants") to dismiss the complaint.[1]  [Dkt. Nos. 24, 48].  Plaintiff Ashken Thornton, appearing pro se, has filed a letter in opposition to the first of these motions, but failed to file anything in opposition to the second motion.  [Dkt. No. 28].  This matter is now ripe for adjudication.[2]  For the following reasons, I recommend the motion to dismiss filed by DePierre and Tikellis [Dkt. Nos. 24] be ALLOWED and the motion to dismiss filed by Macy's [Dkt. No. 48] be ALLOWED in part and DENIED in part.  I recommend Reyes be DISMISSED sua sponte.

---

[1] The separate motions assert similar arguments.  [See Dkt. Nos. 25, 49].  I address them collectively.

[2] All appearing parties have consented to my jurisdiction pursuant to Fed. R. Civ. P. 73(b)(1).  However, Reyes has not been served and, as such, has not consented.  Accordingly, I enter this Report and Recommendation pursuant to Fed. R. Civ. P. 72(b)(1).

1

I.   BACKGROUND

   A.   Thornton's Employment

Thornton is a former Macy's employee assigned to the Lancôme cosmetics counter. [Dkt. No. 1 ("Compl.") at p. 6]. Thornton is of Armenian descent and at the time of her termination in August 2014, she was 45 years old. [Dkt. Nos. 25-1, 49-1 ("MCAD Charge") ¶ 1].[3] She alleges that her co-workers were in their 20's. [Id. ¶ 3]. In July 2013, Manager Sara Morand promoted Thornton to be the Lancôme counter manager. [Id.]. Thornton alleges a series of adverse interactions with co-workers following her promotion, eventually leading to her termination on August 8, 2014.[4]

Thornton alleges that in October 2013, co-worker DePierre disparaged her appearance, saying Thornton needed to use skincare products because she was older than other employees. [Compl. at p. 9; Dkt. Nos. 25-3, 49-3 ("MCAD Decision") at p. 4]. In November 2013, another co-worker commented that Thornton did not know how to communicate because of her "national language," saying that her accent made her sound "rude." [MCAD Decision at p. 4].

Thornton also alleges incidents at work that she considers harassment. These include: her co-workers deliberately messing up her workspace and throwing away her business cards in October 2013 [Compl. at p. 11; MCAD Charge ¶ 4]; a manager falsely accusing Thornton on May 21, 2014 of stealing a customer from another employee [Compl. at pp. 13–14]; a co-worker threatening "punch out" Thornton on December 24, 2013 [Id. at p. 15]; several co-workers (including DePierre) refusing to accompany Thornton to a seminar on July 23, 2014 [Id. at p. 19];

---

[3] Thornton alleges in her complaint that she was 47 years old at the time of the discriminatory conduct. [Compl. at p. 9].

[4] Thornton's MCAD charge alleges termination on August 7, 2014. [MCAD Charge ¶ 9]. For present purposes, I will accept that Thornton was terminated on August 8, 2014, as alleged in the instant complaint.

and the consistent failure of Thornton's superiors to respond to Thornton's complaints about these incidents. [Id. at pp. 10, 12, 15].

Additionally, Thornton alleges the following undated incidents: a subordinate falsely saying Thornton made an inappropriate remark about that subordinate's dying grandmother [Id. at p. 13]; DePierre failing to give Thornton a new uniform or cosmetics brushes [Id. at p. 10]; Thornton's subordinates hiding the keys to the cosmetics display box and lying to her about it [Id. at p. 11]; a subordinate deliberately giving her a bad makeover [Id. at p. 12]; co-workers calling Thornton incompetent and unfit [Id. at p. 14]; and repeated incidents of lying by subordinates. [Id. at pp. 11, 13, 14, 18].

    B.    Macy's Disciplinary Action

On February 8, 2014, Thornton was placed on "Decision Making Leave" or "DML" for underperformance. [Id. at p. 15]. She was told to return to work with an "Action Plan" for improvement. [Id. at p. 16]. According to Thornton, the alleged reason for the DML was Thornton essentially taking credit for sales made by a co-worker by reporting the sale under Thornton's employee ID number. [Id. at p. 16]. Thornton alleges that the transaction was proper, but nevertheless complied with the order to create an "Action Plan." [Id. at pp. 15–16]. Thornton attended a meeting in May with Tikellis, a human resources representative, regarding Thornton's performance evaluation. [Id. at p. 17]. At the meeting, Thornton learned she would not receive a raise due to the DML. [Id.] Thornton alleges her DML was pretextual and that her complaints regarding her co-workers triggered the adverse action. [MCAD Charge ¶ 6]

Thornton further alleges that Macy's retaliated against her for her complaints against co-workers when she was reprimanded for allegedly stealing on July 29, 2014. [Compl. at p. 7]. On that day, Omar Reyes, the Regional Security Manager, accused Thornton of stealing merchandise.

3

[Id.]. Thornton acknowledges that she took some cosmetics samples but insists that the practice of taking samples was common, and that only she was reprimanded. [Id. at p. 8] Thornton alleges Reyes kept her in his office for two hours of "brutal harassment" and "savage interrogation." [Id.] Thornton was suspended, and she was told to call Human Resources within 24 hours or face termination. [Id.] Thornton alleges she attempted to do so, but no one answered. [Id.] On August 8, 2014, Tikellis terminated Thornton for violating company policy. [Id.] Thornton alleges the reason for her termination was pretextual, and that her termination was discriminatory and retaliatory. [Id. at pp. 6–8]. To help support this contention, Thornton alleges that she was a highly successful employee, that since she began working at Macy's in 2007, she has never missed a day of work, coordinated several successful events for the Lancôme Counter, was recognized for excellence in participating in Macy's charity work, and won "Best Employee of the Year" in 2010, 2011, and 2012. [Id. at p. 20–21].

C. MCAD and EEOC Exhaustion

On December 30, 2014, Thornton filed a charge of discrimination with the Massachusetts Commission Against Discrimination ("MCAD"), alleging she "was discriminated against by Macy's on the basis of Age (45), National Origin (Armenian), and Retaliation" and that she was subjected "to a hostile working environment" on the same basis.[5] [MCAD Charge at p. 2; ¶ 10]. She also alleged that her DML resulted from "retaliation because I complained about the comments about my national language and other events that I had brought up to management." [MCAD Charge ¶ 6]. She further alleged she was fired because Macy's wished to replace her with someone younger who was not of Armenian descent. [Id. ¶ 9]. The MCAD charge also expressly alleged the following incidents: two subordinates throwing away her business cards and journal in October

---

[5] She also filed a charge with the Equal Employment Opportunity Commission ("EEOC"). [Dkt. No. 61].

2013; DePierre making a disparaging comment about Thornton's appearance in October 2013; an assistant manager making a discriminatory comment about plaintiff's accent in November 2013; the February 2014 DML; the July 29, 2014 interaction with Reyes; and Thornton's termination in August 2014. [MCAD Charge ¶¶ 3–9].[6]

On December 30, 2016, the MCAD made a finding that Thornton's claim lacked probable cause. [MCAD Decision at p. 9]. The Investigator also found Thornton's claim to be time-barred as to incidents which occurred before March 5, 2014. [Id. at pp. 2–3]. Thornton's lawyer failed to prosecute an appeal, as Thornton had requested. [Dkt. No. 28].

D. Procedural History

On April 27, 2020, proceeding pro se, Thornton filed the instant action against Macy's and certain co-workers alleging discrimination, retaliation, and harassment. [Compl. pp. 4, 6]. On May 7, 2020, the undersigned issued an order granting Thornton's request to proceed in forma pauperis, and ordered her to file a document or amended complaint which identified her particular claims, and to show cause as to why her case should not be dismissed on grounds of the statute of limitations and the failure to exhaust her administrative remedies. [Dkt. No. 4]. Thornton responded that she had exhausted her administrative remedies with MCAD and that she was "asserting . . . claims of discrimination and retaliation," based on "race, age, national origin, sex, [and] religion." [Dkt. No. 7 at p. 2]. She also alleged "intimidation, coercion, bullying, harassment and discrimination … aimed to deprive" her of her right to work. [Id.]. The undersigned declined to rule on whether Thornton's claims were timely or administratively exhausted, [Id. at p. 3], and

---

[6] On April 22, 2015, Plaintiff amended her MCAD charge to include a post-termination incident on April 6, 2015 when Thornton used her "Macy's Money," a benefit she earned as a Macy's employee. [Dkt. No. 49-2 ("MCAD Amendment")].[6] Macy's refused to accept her "Macy's Money" because she was no longer an employee. [Id.]. Thornton avers that she has used her "Macy's Money" at other Macy's locations since her termination without issue. [Id.]. This incident is not alleged in Thornton's federal complaint and is therefore not addressed herein. The MCAD charge was reportedly amended again on August 5, 2016, but there is no indication how it was amended. [MCAD Decision at p. 4; Dkt. No. 7 at p. 2].

5

inferred from Thornton's response that she asserted claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a)(1), and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1). [Dkt. No. 8 at p. 2].

### E.  Thornton's Legal Claims

Thornton does not explicitly identify the laws upon which she bases her suit. [Compl.]. Because she is pro se, this is not fatal to her case. See Dutil v. Murphy, 550 F.3d 154, 158 (1st Cir. 2008). Her complaint expressly alleges discrimination, retaliation, and harassment. [Compl. pp. 4, 6]. Further, Thornton attributes this conduct to Macy's management and co-workers and alleges it was because of her "[her] look, [her] age, [her] language, [her] personality, and [her] identity in every possible way." [Id. at p. 6]. Her twenty-one page complaint contains a narrative of events and commentary that recounts specific incidents and her complaints to Macy's management. A fair reading of her complaint thus reflects allegations of (1) discriminatory termination; (2) retaliation; and (3) hostile work environment.[7] I address the motions to dismiss as to these three claims.

## II.  LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure provides, in relevant part, that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). At a minimum, "the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why – although why, when why means the actor's state of mind, can be averred generally." Educadores Puertorriquenos En Accion v. Hernandez, 367 F.3d 61, 68 (1st Cir. 2004).

---

[7] Although Thornton expressly alleges "harassment" and not a "hostile work environment," a fair reading of her complaint reflects that she is alleging a hostile work environment.

6

On a motion to dismiss, "the district court may properly consider only facts and documents that are part of or incorporated into the complaint; if matters outside the pleadings are considered, the motion must be decided under the more stringent standards applicable to a Rule 56 motion for summary judgment." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (quoting Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008)). There lies an exception to this rule "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Id. (quoting Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001)).

The court must construe a pro se complaint liberally. Sause v. Bauer, 138 S. Ct. 2561, 2563 (2018); see Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (quotations omitted)). Acknowledging the "obstacles that pro se litigants face, and while such litigants are not exempt from procedural rules, we hold pro se pleadings to less demanding standards than those drafted by lawyers and endeavor, within reasonable limits, to guard against the loss of pro se claims due to technical defects." Dutil, 550 F.3d at 158. This leniency, however, "cannot be taken to mean that pro se complaints are held to no standard at all." Green v. Massachusetts, 108 F.R.D. 217, 218 (D. Mass. 1985) (internal citations omitted). It is not the job of the court "in an effort to ferret out the adequacy of a plaintiff's pleaded allegations, to haphazardly mine documents appended to a complaint." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 79–80 (1st Cir. 2014).

III.     ANALYSIS

Defendants move to dismiss on three grounds: (1) the individual defendants cannot be held liable under Title VII or the ADEA; (2) Thornton has failed to administratively exhaust her claims; and (3) Thornton's claims are time-barred. I address each in turn.

A.     Individual Defendants

Thornton has asserted claims against three individual defendants: Omar Reyes, Cathy Tikellis, and Betty DePierre. For the following reasons, I find all three individual defendants should be dismissed.

   1.     Omar Reyes

As a preliminary matter, Thornton has repeatedly failed to serve Reyes, and I recommend he be dismissed sua sponte. On October 5, 2020, the undersigned ordered Thornton to show cause for failure to complete service on Defendants Omar Reyes and Macy's. [Dkt. No. 39]. On November 3, 2020, Thornton responded to the Order with a letter detailing her reasons for failing to serve Macy's. [Dkt. No. 40]. The letter made no mention of Reyes or Thornton's failure to serve him. [Id.] On January 21, 2021, Thornton filed a letter (dated January 19, 2021) requesting legal advice on whether she could voluntarily dismiss Reyes, or whether she was required to serve him. [Dkt. No. 52].[8] On January 28, 2021, this Court ordered Thornton to serve Mr. Reyes or voluntarily dismiss him by February 14, 2021. [Dkt. No. 54]. On February 4, 2021, Thornton asked for an enlargement of time to February 19 to serve Reyes, which this Court granted. [Dkt. Nos. 56, 57]. After Thornton failed to file by February 19, 2021, on February 26, 2021, the undersigned issued an order directing Thornton to file a voluntary notice of dismissal of Reyes by

---

[8] Defendants Macy's, DePierre and Tikellis responded to Thornton's letter (copying Thornton), noting that they had all filed motions to dismiss, opposing an enlargement of time for Thornton to serve Reyes, agreeing to Thornton's voluntary dismissal of Reyes and attaching a proposed stipulation of dismissal for Thornton to sign. [Dkt. No. 53].

8

March 1, 2021 and advising her that a failure to do so would result in dismissal of Reyes. [Dkt. No. 62]. I am advised that in response Thornton contacted the clerk's office on March 2, 2021, seeking advice on what to do.⁹ The docket reflects a failure to serve Reyes. [See Dkt. Nos. 39, 54, 57].

"If the plaintiff fails to prosecute or comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). "Although Rule 41(b) refers only to dismissal on a motion made by a defendant, district courts may also sua sponte dismiss a complaint under Rule 41(b) for failure to comply with a court order." Dejong v. Berryhill, No. 4:18-CV-40163, 2019 WL 5150173, at *2 (D. Mass. Aug. 23, 2019) (quoting Heather S. v. Berryhill, 18-CV-00178, 2018 WL 4781169, at *1 (D. Me. Oct. 3, 2018)); Abernathy v. Dickhaut, No. 10-CV-11504, 2014 WL 1338283, at *3 (D. Mass. Mar. 31, 2014).

The efforts of the undersigned to compel Thornton to serve Reyes have been ongoing for nearly five months. During this time, Thornton has repeatedly failed to serve Reyes, even when granted additional opportunities and enlargements of time to do so. Motions to dismiss by the individual defendants who have been served have been pending since early August 2020, [Dkt. No. 24]; Macy's executed a waiver of service in October 2020 and its motion to dismiss has been pending since early December 2020, [Dkt. Nos. 44, 48]. In my view, Thornton's failure to serve Reyes by this time is sufficient to warrant dismissing Reyes. Kick Ass Pictures, Inc. v. Does 1-25, 939 F. Supp. 2d 62, 63 (D. Mass. 2013) (quotations and original alterations omitted) ("Failing to make service of process on the defendants in itself suffices for a finding of lack of prosecution."). Therefore, I recommend Reyes be dismissed as a defendant.

---

⁹ In retrospect, and in particular given Thornton's pro se status, I think my February 26 order was regrettably heavy-handed; thus, I do not consider in this Report and Recommendation Thornton's failure to file a voluntary dismissal by March 1, 2021.

2. Tikellis and DePierre

Tikellis and DePierre argue that Thornton's claims against them under Title VII and the ADEA must be dismissed. I agree. "[T]here is no individual employee liability under Title VII." Fantini v. Salem State Coll., 557 F.3d 22, 30 (1st Cir. 2009). Rather, "Title VII addresses the conduct of employers only and does not impose liability on co-workers." Id. at 31 (quoting Powell v. Yellow Book U.S.A., Inc., 445 F.3d 1074, 1079 (8th Cir. 2006)). Similarly, there is no individual liability under the ADEA. Pace v. Town of Erving, 294 F. Supp. 3d 5, 8 (D. Mass. 2018); Ventura v. Hanitchak, 719 F. Supp. 2d 132, 137 (D. Mass. 2010). As individual co-workers of Thornton, Tikellis and DePierre cannot be held individually accountable under Title VII or the ADEA, and I recommend they be dismissed as defendants entirely.

B. Corporate Defendant – Macy's

Because I have determined that the individual defendants should be dismissed, the remainder of this recommendation addresses Thornton's discriminatory termination, retaliation and hostile work environment claims as against Macy's.[10] Macy's argues that Thornton has failed to exhaust her claims and that her claims are time-barred.[11]

1. Administrative Exhaustion

Macy's argues that Thornton has not exhausted her administrative remedies, specifically that she (1) failed to obtain a right-to-sue letter from the EEOC; and (2) that Thornton failed to exhaust her remedies as to all her claims with the MCAD. A plaintiff's failure to exhaust administrative remedies under Title VII is an affirmative defense that the defendant bears the

---

[10] Because I find that the individual defendants must be dismissed entirely, I do not address their argument that Thornton failed to exhaust her administrative remedies as to the individual defendants.

[11] Macy's does not challenge the complaint as failing to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). [See Dkt. No. 49].

10

burden of establishing. Fisher v. Town of Orange, 885 F. Supp. 2d 468, 478 (D. Mass. 2012).[12] I reject Macy's arguments.

Both Title VII and the ADEA require an employee to exhaust the administrative process before filing a civil suit in court, and "failure to do so normally precludes the filing of that claim." Posada v. ACP Facility Servs., Inc., 389 F. Supp. 3d 149, 158 (D. Mass. 2019); Connolly v. Shaw's Supermarkets, Inc., 355 F. Supp. 3d 9, 16 (D. Mass. 2018). A plaintiff in Massachusetts may file "with either the EEOC or the MCAD" to "effectively file[] with both agencies." Connolly, 355 F. Supp. 3d at 16. The exhaustion requirement serves two purposes: "[f]irst, it is meant to provide the agency with an opportunity to investigate and conciliate the claim of discrimination. Second, the filing requirement provides notice to the defendant of a potential suit." Conroy v. Bos. Edison Co., 758 F. Supp. 54, 57 (D. Mass. 1991).

Macy's first argues that Thornton filed this suit before she received her right-to-sue letter from the EEOC. To file a suit under Title VII or the ADEA, a plaintiff must first receive a right-to-sue letter from the EEOC. Browne v. Sodexo, Inc., No. CIV.A. 10-11995, 2011 WL 2729205, at *5 (D. Mass. July 5, 2011), report and recommendation adopted, No. CIV.A. 10-11995, 2011 WL 2729212 (D. Mass. July 12, 2011) (finding that the plaintiff failed to exhaust his remedies by failing to submit his right-to-sue letter). On February 24, 2021, Thornton submitted her right-to-sue letter to the Court, [Dkt. No. 61], voiding this argument.

Macy's further argues that Thornton failed to exhaust her administrative remedies as to discrimination based on race, sex, and religion. I agree. However, while this may be true, the argument does not support dismissal of the complaint. I analyze each of Thornton's claims of

---

[12] "As a general rule, a properly raised affirmative defense can be adjudicated on a motion to dismiss so long as (i) the facts establishing the defenses are definitely ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude." Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 12 (1st Cir. 2004).

discriminatory termination, retaliation, and hostile work environment to determine whether she failed to exhaust them.

"[I]n employment discrimination cases, 'the scope of the civil complaint is limited by the [administrative charge] and the investigation which can reasonably be expected to grow out of that charge.'" Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996) (quoting Powers v. Grinnell Corp., 915 F.2d 34, 38 (1st Cir. 1990)) (original alterations omitted). A plaintiff "must 'describe the essential nature of the claim and . . . identify the core facts on which it rests.'" Manning v. Abington Rockland Joint Water Works, 357 F. Supp. 3d 106, 114 (D. Mass. 2019) (quoting Lattimore, 99 F.3d at 464). "In cases where, as here, the employee acts pro se, the administrative charge is liberally construed in order to afford the complainant the benefit of any reasonable doubt." Lattimore, 99 F.3d at 464. "Although an investigation is not strictly confined to allegations in the charge, it is not a 'fishing expedition' that should be expected to extend to matters unrelated to the charge." Id. at 465. An MCAD charge must contain "[a]ppropriate identification of the complainant(s) and the person(s) alleged to have committed unlawful discriminatory acts." 804 CMR § 1.04(6)(d). Applying this law, Thornton has exhausted claims of discrimination, retaliation, and hostile work environment.

With respect to discriminatory termination, Thornton alleges in the federal complaint that her August 8, 2014 termination "was a result of targeted, group discrimination, harassment and retaliation by …[co-workers] and managers." [Compl., p. 6]. She further alleges that this discrimination was grounded in her "look … age…language…personality and … identity in every possible way." [Id.]. Her MCAD charge alleged that Thornton "was discriminated against by Macy's on the basis of National Origin (Armenian), Age (45), and Retaliation." [MCAD Charge at p. 2]. The MCAD charge claimed that in August 2014 Macy's terminated her purportedly

12

because she violated company policy. She alleged this reason was pretextual and that she was terminated to make room for a younger employee who is not Armenian, and in retaliation for complaints of discrimination. [Id. ¶¶ 9, 10]. It seems clear that because Thornton supports her alleged discriminatory termination on grounds raised before the MCAD—national origin, age and retaliation—she has administratively exhausted the claim and the motion to dismiss should be denied.

The same is true of her retaliation claim. In her complaint, Thornton alleges Macy's retaliated against her by placing her on a disciplinary plan in February 2014 and terminating her in August 2014. While not expressly tied to her complaints about alleged discriminatory remarks and actions, a fair reading of the federal complaint as a whole, sufficiently links the instances of retaliation to Thornton's reports to management about discrimination by co-workers. The MCAD charge largely mirrors this but is explicit. In the MCAD charge, Thornton alleged that Macy's placed Thornton on a DML because she complained about comments made by co-workers about her "national language and other events" she had brought to the attention of Macy's management. [MCAD Charge ¶ 6]. Similarly, she alleged that she was terminated, in part, for complaining about discrimination. [Id. ¶10]. Based on this record, I find that the claim of retaliation is also exhausted.

Finally, I turn to Thornton's hostile work environment claim. In her complaint, Thornton alleges she was the subject of "bias, dislike, hate and harassment, humiliation, unacceptance and discrimination." [Compl. at p. 6]. Elaborating on this allegation, she recounts numerous allegedly harassing incidents. [Id. at pp. 6–20]. In her MCAD charge, Thornton sufficiently pled incidents that could lead to a claim of a hostile work environment: two subordinates throwing away her business cards and journal in October 2013; DePierre making a disparaging comment about Thornton's appearance in October 2013; an assistant manager making a discriminatory comment

about Thornton's accent in November 2013. [MCAD Charge ¶¶ 3–5]. She also alleged in the MCAD charge that she believes Macy's "discriminated against [her] by subjecting [her] to a hostile working environment." [Id. ¶ 10]. Considering this statement and her allegations of rude and potentially discriminatory conduct, her charge is sufficient to put Macy's on notice of her potential claim. El-Sayed v. Carda CL New England, Inc., No. 14-14724-LTS, 2016 WL 3814808, at *5 (D. Mass. July 13, 2016) (finding a plaintiff exhausted his hostile work environment claim where he alleged several incidents of discriminatory or unsavory conduct). Thus, I find that Thornton has exhausted her hostile work environment claim.

In sum, I agree with Macy's argument that Thornton failed to exhaust claims of discrimination on the basis of race, religion, or sex. The MCAD charge does not even mention, let alone obliquely suggest, discrimination on the basis of race, religion or sex. However, Thornton did raise before the MCAD discrimination and hostile work environment claims based on her age, national origin and retaliation. Because the claims in the federal complaint are within the scope of the MCAD charge, I recommend that the motion to dismiss on this ground be denied.[13]

2. Timeliness of Thornton's Claims

Macy's also argues that Thornton's claims are time-barred and seeks dismissal of all "claims related to conduct prior to March 5, 2014." [Dkt. No. 49 at 7]. Insofar as Thornton alleges a hostile work environment, I recommend her claim be dismissed as untimely. However, as discussed below, I recommend that her claims of discriminatory and retaliatory termination survive.

---

[13] Macy's also argues that a number of incidents were not raised before the MCAD and hence were not administratively exhausted. [Dkt. No. 49 at 7]. While this may be true, as the foregoing analysis shows, Thornton exhausted her three claims and recounted incidents in connection with them. Accordingly, I find Macy's argument about the failure to exhaust certain incidents to be inconsequential and do not address it further.

In Massachusetts, a plaintiff alleging employment discrimination under the ADEA or Title VII must file a charge of discrimination with the MCAD or EEOC within 300 days of the alleged discriminatory act. See Fontanez-Nunez v. Janssen Ortho LLC, 447 F.3d 50, 55 (1st Cir. 2006); see also 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1)(a). Thornton filed her charge with the MCAD on December 30, 2014. (MCAD Charge). Thus, she would be timely only as to claims that occurred after March 5, 2014. The instant complaint alleges a series of incidents, many undated and many occurring before March 5, 2014. Any of the three claims which is dependent on such undated or untimely incidents, is subject to dismissal.

As to discriminatory termination, Thornton alleges in the federal complaint that Macy's fired her on August 8, 2014. Her termination was plainly within 300 days of her MCAD filing. Thus, the claim of discriminatory termination is timely.

As to retaliation, Thornton alleges two discrete acts: the February DML and her August termination. "Each discrete discriminatory act starts a new clock for filing charges alleging that act." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). The February DML is clearly time-barred. However, for the same reasons stated in the prior paragraph, her termination is timely and supports the claim of retaliation. Therefore, Thornton's claim of retaliation—insofar as it relies on her termination—is timely.

Finally, I turn to Thornton's claim of a hostile work environment. The timeliness of this claim involves a more complex inquiry. Macy's correctly asserts that Thornton's harassment claim relies on untimely and undated acts.[14] [Dkt. No. 49 at 7].

---

[14] Thornton cannot circumvent the statute of limitations bar by citing conduct with no date. Smith v. Mukasey, No. C07-00899RJB-DAD, 2008 WL 435350, at *7 (E.D. Cal. Feb. 14, 2008); see also 42 U.S.C. § 2000e-5(e)(1) ("the charge (including the date, place, and circumstances of the alleged unlawful employment practice) shall be served on the person against whom such charge is made."); see Cadigan, 2020 WL 3799191, at *5 (noting the plaintiff bears the burden of proving her allegations are timely).

To prove that her untimely allegations remain actionable, Thornton must show that her claim was within the scope of the "continuing violation doctrine." Morgan, 536 U.S. at 107; Ayala v. Shinseki, 780 F.3d 52, 57 (1st Cir. 2015). An exception to the limitations period, the continuing violation doctrine allows a plaintiff with time-barred claims to "avoid that bar if those acts are shown to be part of a pattern of discrimination anchored by acts that occurred within the limitations period." Noviello v. City of Bos., 398 F.3d 76, 86 (1st Cir. 2005).

To properly assert a continuing violation, a plaintiff must allege

(1) at least one discriminatory act occurred within the limitations period, (2) the alleged timely discriminatory act has a substantial relationship to the alleged untimely discriminatory act, and (3) the otherwise time-barred events did not trigger his "awareness and duty" to assert his rights.

Windross v. Barton Protective Servs., Inc., 586 F.3d 98, 103 (1st Cir. 2009); see also Goldman v. Sears, Roebuck & Co., 607 F.2d 1014, 1017–18 (1st Cir. 1979) (applying the continuing violation doctrine to an ADEA claim). To properly establish an anchoring event that "substantially relate[s] to the earlier incidents of abuse," a plaintiff must allege a timely act that is "sufficiently similar" to the untimely acts. DaCosta v. Town of Plymouth, No. CIV.A. 11-12133-MBB, 2014 WL 2998986, at *14 (D. Mass. July 1, 2014) (quoting Lockridge v. The Univ. Of Maine Sys., 597 F.3d 464, 474 n.7 (1st Cir. 2010)); see also Noviello, 398 F.3d at 87 ("[I]n order to invoke this doctrine, a claimant must show at a bare minimum a series of discriminatory acts that emanate from the same discriminatory animus."). While the court takes the facts in the light most favorable to the plaintiff, nevertheless the burden is on the plaintiff to show that her claim meets each element of the continuing violation doctrine. Cadigan v. Align Tech., Inc., No. 1:19-CV-11462-ADB, 2020 WL 3799191, at *5 (D. Mass. July 7, 2020).

A review of Thornton's federal complaint shows four incidents which occurred within the 300-day statutory period: (1) a manager falsely accusing Thornton on May 21, 2014 of "stealing" a customer from a co-worker; (2) several co-workers shunning Thornton at a seminar on July 23, 2014; (3) Reyes' interrogation of Thornton for allegedly stealing on July 29, 2014; and (4) Thornton's discharge on August 8, 2014.  Thus, the question is whether any of these incidents is "sufficiently similar" to the untimely conduct such that it could suffice as an "anchoring act."

I find Thornton has failed to show that these four timely alleged discriminatory acts substantially relate to the untimely allegations Thornton offers to show a hostile work environment.  From the face of the federal complaint, Thornton's interaction with Reyes and her termination were based on her unauthorized taking of cosmetic samples, misconduct to which Thornton admitted.  Moreover, Thornton does not allege Reyes was involved in any of the prior untimely conduct.  Rather, Reyes was involved with Thornton because he served as Regional Security Manager and he was investigating potential theft.  These incidents are not sufficiently similar to the inappropriate comments by co-workers regarding Thornton's race and national origin.  See DaCosta, 2014 WL 2998986, at *17 (determining that no reasonable fact finder could find conduct involving different actors to be substantially related).

Being shunned at a seminar and accused of stealing a customer also cannot anchor the undated or untimely act supporting a hostile work environment claim because Thornton has not alleged any basis to find these incidents emanate from the same discriminatory animus—regarding her Armenian descent and age—behind the undated and untimely incidents.  A plaintiff can rely on an anchoring act only if that act is actionable.  Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 7 (1st Cir. 2005); Lawton v. State Mut. Life Assur. Co. of Am., 101 F.3d 218, 222 (1st Cir. 1996) ("Common sense teaches that a plaintiff cannot resuscitate time-barred

acts, said to be discriminatory, by the simple expedient of linking them to a non-identical, non-discriminatory, non-time-barred act."). Thornton does not allege a factual basis to show she was shunned at the seminar because of national origin or age. [Compl. at pp. 19–20]. Similarly, the allegation that a manager accused Thornton of stealing a customer does not implicate discrimination or treatment based on age or other protected status in the absence of a factual basis to support such an implication. [Id. at p. 13]. In each instance, the conduct is fundamentally different in character than, for example, comments about Thornton's accent. See Perez v. Horizon Lines, Inc., 804 F.3d 1, 7 (1st Cir. 2015) (finding that a plaintiff could not anchor an untimely hostile work environment claim with an incident where his boss requested he bring her cornbread); see also Burns v. Johnson, 18 F. Supp. 3d 67, 75 (D. Mass. 2014) (setting aside certain allegations in a hostile work environment claim because plaintiff makes no allegation that a co-worker's harsh comments were based on her gender). Despite the generous pleading standard accorded pro se litigants, Thornton still bears the burden of proving her claim is within the scope of the continuing violation doctrine. See Cadigan, 2020 WL 3799191, at *5. Because she has failed to do so in this case, I find her claim of a hostile work environment untimely, and I recommend it be dismissed.

IV.     CONCLUSION

For the foregoing reasons, I recommend: (1) the motion to dismiss DePierre and Tikellis be ALLOWED; (2) Macy's motion to dismiss filed by Macy's be ALLOWED as to Thornton's claim of hostile work environment and DENIED as to Thornton's discriminatory termination and retaliation claims; and (3) that Omar Reyes be DISMISSED sua sponte.[15]

/s/ David H. Hennessy
David H. Hennessy
United States Magistrate Judge

---

[15] The parties are notified that any party who objects to these proposed findings and recommendations must file a written objection thereto within fourteen days of service of this Report and Recommendation.  The written objections must identify with specificity the portions of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72(b)(2).  The United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See, e.g., United States v. Diaz-Rosado, 857 F.3d 89, 94 (1st Cir. 2017); United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Keating v. Sec'y of Health & Hum. Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140 (1985).