UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS (WORCESTER)

| | |
|---|---|
| ASHKHEN THORNTON,<br><br>        Plaintiff,<br><br>v.<br><br>MACY'S RETAIL HOLDINGS, INC., ET. AL.<br><br>        Defendants. | Case No. 4:20-CV-40045-DHH |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO COMPEL ARBITRATION**

Defendant Macy's Retail Holdings, LLC, (formerly Macy's Retail Holdings, Inc.) (hereinafter "Macy's"), by and through its undersigned counsel, hereby submits its Memorandum in Support of its Motion to Compel Arbitration:

### I.     INTRODUCTION

Plaintiff Ashkhen Thornton ("Thornton"), a former employee of Defendant Macy's Retail Holdings, LLC ("Macy's"), agreed to arbitrate all employment-related disputes she might have with Macy's on an individual basis under the Solutions InSTORE Program, Macy's internal dispute resolution program. Unlike many other employment arbitration agreements, employees may opt out of arbitration under the Solutions InSTORE Program. At the beginning of her employment, Plaintiff was provided with a Plan Document and other materials that explained the Solutions InSTORE Program, including that an employee agrees to binding arbitration on an individual basis instead of a jury trial unless the employee opts out within the prescribed time period. Despite an opportunity to do so, Plaintiff elected not to opt out of arbitration and continued her employment.

Thornton, however, attempted to avoid her agreement to arbitrate these claims by filing suit

before this Court. Because all of Plaintiff's claims filed in this lawsuit fall squarely within the scope of the arbitration agreement, Macy's requests this Court to order Thornton to honor her agreement by compelling her to arbitrate her claims, and to dismiss, or in the alternative stay, this action pending the outcome of the arbitration.

## II.     STATEMENT OF FACTS

### A.     The Solutions InSTORE Program.

In 2003, Macy's, then known as Federated Department Stores, Inc., developed and implemented a comprehensive internal early dispute resolution program known as Solutions InSTORE ("SIS"). (Declaration of Cynthia Ripak ("Ripak Decl."), ¶ 5.)  SIS is a four-step process that allows employees an opportunity to raise and resolve workplace disputes early and fairly. *Id*. ¶¶ 5, 9.  As described in the SIS Plan Document (Ripak Decl., Ex. A), the four steps of the SIS program are:

**Step 1**: Referred to as "Open Door," employees are encouraged to bring their concerns to a supervisor or local management team member for discussion and resolution.

**Step 2**: The employee submits a written request for review of the Step 1 decision to the Office of the Senior Human Resources Management. A human resources executive not involved in the underlying decision conducts an investigation.

**Step 3**: The employee submits a written Request for Reconsideration of the Step 2 decision to the Office of Solutions InSTORE. If the dispute involves claims related to layoffs, harassment, discrimination, reduction in force or other statutory violations, a trained professional investigates. Other disputes, including disputes

>over termination and final warnings, may be submitted to a Peer Review Panel. In either case, local management is not involved in the Step 3 decision.
>
>**Step 4:** Binding arbitration administered by the AAA. Step 4-Arbitration is voluntary in that employees are given at least one opportunity to opt out of it.

(Ripak Decl., ¶ 10, and Ex. A.)

By accepting or continuing employment with Macy's, all employees agree to Step 4-Arbitration. *Id.* at ¶ 9, Ex. A, p. 2. However, an employee may elect to opt out of Step 4-Arbitration by completing an Election Form and mailing it back to the SIS post office box address listed on the Election Form within the prescribed time frame. *Id.* ¶¶ 20-30, Exs. A, B, and C.

The SIS Program prohibits retaliation against employees. (Ripak Decl. ¶ 13.) An employee's election whether to participate in Step 4-Arbitration is confidential. *Id*. ¶ 14. No one in the employee's store or other work location has access to this information. *Id*. In fact, only a select few company employees located in Ohio have access to this information, and then only when such information is pertinent to the handling of the employee's claim. *Id*. Thus, employment with Macy's is not conditioned on the employee's decision about participating in Step 4-Arbitration and the employee's decision does not detrimentally affect her employment.

### B.  The SIS Program Is Fair, Equitable, and Efficient.

The SIS Program is designed to ensure that employees are treated fairly:

- **The Employee Is In Control.** Employees are not required to go through Steps 1, 2, or 3 before proceeding to Step 4-Arbitration (Ripak Decl., ¶ 10), but if they choose to go through Steps 1, 2, or 3 before Step 4-Arbitration, the employee alone has the right to proceed to the

next step. *Id.* ¶ 12. Thus, an employee who obtains a favorable result at any of the first three steps can bind Macy's to that result simply by declining to go to the next step. *Id*. ¶ 12.

- **Minimal or No Fees or Costs to the Employee.** An employee initiating arbitration pays a filing fee of one day's pay or $125, whichever is less. Macy's pays the other arbitration costs, except for incidental costs (depositions and the like which would be the same as a court case). *Id.* ¶ 16, Ex. A, pp. 14-15.

- **The Employee Decides Whether Lawyers Are Involved.** If the employee decides not to have counsel present at the arbitration, Macy's also appears without counsel. *Id*., Ex. A p. 9.

- **Reimbursement of Certain Costs/Fees.** If the employee is represented by an attorney at the arbitration, Macy's will reimburse an employee for this legal consultation and/or representation during Step 4 of the program, at a maximum benefit of Two Thousand Five Hundred Dollars ($2,500) per employee in a rolling twelve (12) month period. *Id*., Ex. A p. 15. If the employee proceeds without an attorney, Macy's will reimburse the employee for incidental costs up to $500 over each continuously rolling 12-month period. *Id*.

- **Governing Rules.** The arbitration is primarily administered under the SIS Plan Document. *Id.*, Ex. A p. 6. The AAA employment arbitration rules may be used to supplement the Plan Document where necessary. *Id.*

- **Mutuality.** If an employee agrees to arbitrate claims against Macy's, Macy's must also resolve claims against the employee in arbitration. *Id.* ¶ 15, Ex. A, p. 6.

- **Discovery.** Agreed-upon discovery includes document disclosures, 20 interrogatories (each of which may contain a request for production of documents), and 3 depositions per side. The arbitrator also may allow additional discovery and subpoenas. *Id.* ¶ 16, Ex. A, pp. 9-10.

- **No Curtailment of Ultimate Relief or Limitations Periods.** The arbitrator has the same power and authority as a judge to grant any ultimate relief under the applicable law. *Id.*, Ex. A, pp. 13-15. The statutes of limitation that apply to court claims apply equally to claims brought in arbitration. *Id.*, Ex. A, p. 8.

- **Written Decision.** The arbitrator must issue a written decision, which is appealable to a court under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq. Id.*, Ex. A, pp. 14, 16.

The SIS Plan Document describes the types of claims that fall within the ambit of the arbitration agreement. With limited exceptions not pertinent here, the agreement covers "all employment-related legal disputes, controversies or claims arising out of, or relating to, employment or cessation of employment," whether the claims arise under federal, state, or local law. Ripak Decl., ¶ 15, Ex. A p. 6. The arbitration agreement is subject to the FAA. *Id.* at Ex. A, p. 16.

    **C.    Thornton was Informed About the SIS Program and Voluntarily Elected to Participate in Step 4-Arbitration.**

        **1.    The Solutions InSTORE New Hire Brochure and Plan Document.**

Thornton was hired in September 2007, as a Sales Associate at Macy's Whitney Field Mall store in Leominster, Massachusetts. (Ripak Decl., ¶ 17) Her employment was terminated on August 7, 2014. *Id.* At the outset of her employment, Thornton was made aware of the SIS Program and her options with respect to Step 4-Arbitration in a variety of ways, including: (1) the 2007 Plan Document; (2) the Solutions InSTORE New Hire Brochure ("New Hire Brochure"); (3) the Solutions InStore Early Dispute Resolution Program Election Form ("opt-out Election Form"); (4) the Solutions InSTORE New Hire Acknowledgement Form; (5) the Solutions InStore website; (6) the Solutions InSTORE poster that is placed in locations

frequented by employees throughout every store or other work location; and (7) the new hire orientation video shown to all new hires that explains the SIS Program and that the employee can opt out of Step 4. *Id.* at ¶ 19, Exs. A through F.

The SIS process is voluntary and is controlled by the employees themselves. As noted, the process is explained to employees in the New Hire Brochure, "*You drive the process* – the Company is bound by the decision at every step, but *you decide* whether you are satisfied or would like to proceed to the next step." *Id.*, Ex. B p. 2 (emphasis added). By electronically signing the New Hire Acknowledgement, Thornton confirmed and agreed, in relevant part, as follows:

> I have received a copy of the Solutions InSTORE brochure and Plan Document and acknowledge that I have been instructed to review this material carefully. I understand that I have 30 days from my date of hire to review this information and postmark my form to the Office of Solutions InSTORE if I wish to exclude myself from coverage under Step 4 of the program, Arbitration.
>
> …
>
> I understand that I am covered by and have agreed to use all 4 steps of Solutions InSTORE automatically by my taking or continuing a job in any part of Macy's, Inc.
>
> This means that if at any time I have a dispute or claim relating to my employment, it will be resolved using the Solutions InSTORE process described in the brochure and Plan Document…. The Solutions InSTORE process includes Step 4, Arbitration, where disputes are resolved by a professional not affiliated with Macy's, Inc. in an arbitration proceeding, instead of by a judge or jury in a court proceeding.
>
> …
>
> I understand that if I do not wish to be covered by Step 4, Arbitration, the only way to notify the Company about my choice is by postmarking my election form within 30 days of hire and mailing it to the Office of Solutions InSTORE. My decision is kept confidential and will not affect my job.

*Id.* at ¶ 19 Ex. D.

The New Hire Brochure further emphasizes the voluntary nature of the program, and makes clear that if an employee wishes to opt out of Step 4-Arbitration, she or she must submit an election form within 30 days of her date of hire:

> ***Step Four: the decision is yours***
>
> Your Solutions InSTORE enrollment period will be your opportunity to decide whether you want to receive all four steps of this program. You are automatically covered by Step 4 unless you choose to exclude yourself…. If you decide you want to be excluded from participating in and receiving the benefits of Step 4, we need you to tell us in writing by completing the form enclosed in this brochure and returning it to the Office of Solutions InSTORE at the address provided within 30 days of your hire date.

*Id.* at ¶ 21, Ex. B, p. 10 (emphasis added). On October 11, 2011, Thornton electronically signed the Solutions InSTORE New Hire Online Acknowledgement Form, in which she acknowledged receiving a copy of the Solutions InSTORE Brochure, Plan Document and Election Form and that she understood she had the option to opt out by returning the form within 30 days. *Id.* at ¶ 19, Ex. G.)

The New Hire Brochure also highlights key provisions of the 2007 Plan Document, which is enclosed with the Brochure. *Id.*, Ex. B. The New Hire Brochure advises employees to read the 2007 Plan Document (which is included with the New Hire Brochure) and to "educate yourself about the benefits and limitations of arbitration to make an informed decision that's best for you." *Id.*, Ex. B, p. 10. Finally, the New Hire Brochure also directs employees to the AAA website for additional information and identifies other places where the employee can request copies of the 2007 Plan Document, such as logging on to www.employeeconnection.net,

requesting it from the local human resources representative, or calling the Office of Solutions InSTORE at 1-866-285-6689.  *Id.* at ¶ 21 and Exhibit B, p. 10.

### 2.  The Opt-Out Election Form.

Thornton affirmatively acknowledged receipt of the Solutions InSTORE Brochure containing the Plan Document and the opt-out Election Form.  *Id.* at ¶ 23, Ex. D.  Like the Brochure, the Election Form makes clear that an employee has 30 days from his/her date of hire to opt out of Step 4-Arbitration and that, if the employee elects not to opt out, he/she will be assenting to arbitration. *Id.*, Ex. C.  The opt-out language is clear and conspicuous, often using bold and/or capital letters.  *Id*.  The Election Form also provides the mailing address of the Office of Solutions InSTORE and states that if the employee elects to opt out of Step 4-Arbitration, the employee must complete and mail the Election Form to the Office of Solutions InSTORE within 30 days of her hire date.  *Id*.

### 3.  The SIS Video

At the time of Thornton's 2007 hire, the Office of Solutions InSTORE provided each store with a Solutions InSTORE new hire informational video.  Each store was directed to show the video to all employees during new hire orientation in 2007.  *Id.* at ¶¶ 19, 25, Ex. E.

### 4.  The SIS Posters

At the time of Thornton's September 2007 hire and throughout her employment, a poster describing the 4-step process of Solutions InSTORE was prominently displayed in Macy's locations frequented by store employees.  *Id.*. at ¶ 20, 26; *see also* Ex. F.  The poster includes the SIS toll-free telephone number.  *Id.*, Ex. F.

### D.  **Thornton Elected to Participate in Arbitration**.

In accordance with Office of Solutions InSTORE procedures, each Election Form is date-stamped when it is opened. *Id.* at ¶ 27. The form is reviewed for completeness and then loaded into the PeopleSoft System, which is used by the Office of Solutions InSTORE to record employees' opt-out status. *Id.* at ¶ 27. Hard copies of the Election Forms also are maintained in filing cabinets. *Id.* at ¶ 29. Thornton never returned an Election Form, thereby electing to participate in Step 4-Arbitration. *Id..* at ¶ 30. By choosing not to return the Election Form despite an opportunity to do so, Thornton declared her consent to Step 4-Arbitration.

Thornton was thoroughly informed about the SIS Program when she was hired in September of 2007. In fact, Thornton was notified no less than seven ways—through the New Hire Brochure, the opt-out Election Form, the 2007 Plan Document, the New Hire Acknowledgement form, the New Hire Orientation, the SIS videotape, and the SIS posters—that she was covered by Step 4 arbitration unless she opted out within thirty days of her date of hire. *Id.* at ¶¶ 19-26. Thornton never returned an Election Form, nor did she ever dispute her inclusion in Step 4 arbitration. *Id.* at ¶¶ 31-33. By choosing not to return the "opt-out" election form, despite the opportunity to do so, Thornton clearly manifested her intent to participate in the provisions of the SIS Program requiring that any employment dispute be arbitrated before the AAA and not be the subject of court action.

### III.   ARGUMENT

Thornton had extensive notice and explanation of the SIS program, and had sufficient opportunity to opt out of Step 4-Arbitration if she wished to do so. By continuing her employment with Macy's, and electing not to opt out of arbitration, Thornton entered into a

binding agreement to arbitrate all employment-related claims, including those raised in this matter.

    **A.**    **Public Policy Favors Enforcing Arbitration Agreements.**

Pursuant to the parties' arbitration agreement,

> [t]he [] agreement, the arbitration proceedings, and any award rendered pursuant to them shall be interpreted under, enforceable in accordance with, and subject to the Federal Arbitration Act, 9 U.S.C. § 1, et seq. regardless of the state in which the arbitration is held or the substantive law applied in the arbitration.

(Ripak Decl., Ex. A p. 16.)

Both Federal and Massachusetts law express a strong public policy favoring arbitration. *See Preston v. Ferrer*, 552 U.S. 346, 352-53 (2008); *St. Fleur v. WPI Cable Systems/Mutron*, 450 Mass. 345, 349, 879 N.E. 2d 27, 31 (Mass. 2008). In 1925, Congress enacted the Federal Arbitration Act ("FAA") to reverse decades of judicial hostility toward arbitration agreements and to place these agreements on the same footing as other contracts. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *Boateng v. Gen. Dynamics Corp.*, 473 F. Supp. 2d 241, 247 (D. Mass. 2007) (citing *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 271 (1995)). Under the FAA, arbitration is proper when there is a valid written agreement covering the asserted claims. 9 U.S.C. § 2. This includes employment arbitration agreements, even where some or all of the claims themselves arise under state law. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001); *Boateng*, 473 F. Supp. 2d at 247. Indeed, arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983); *General Dynamics Info. Tech., Inc. v.*

*Wireless Props., LLC*, 714 F. Supp. 2d 211, 215 (D. Mass. 2010) ("While a court may not 'read out of an arbitration clause an explicit limit upon the scope of that clause' to which the parties have agreed, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself, or an allegation of waiver, delay, or a like defense to arbitrability.'") (citing *Moses H. Cone*, and *Combined Energies v CCI, Inc.*, 514 F.3d 168, 172 (1st Cir. 2008)).

Guided by the FAA, the U.S. Supreme Court has repeatedly held that arbitration agreements are to be read liberally to affect their purpose, and are to be "rigorously enforced." *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24-25; *Perry v. Thomas*, 482 U.S. 483, 490 (1987); *Anderson v. Comcast, Corp.*, 500 F.3d 66, 70 (1st Cir. 2007). Indeed, arbitration has become an accepted and favored method of resolving disputes, especially employment disputes such as this.

      **B.**      **The Arbitration Agreement Is Valid and Enforceable.**

On a motion to compel arbitration, the court considers two key issues: (1) whether the parties formed a valid and enforceable agreement to arbitrate and (2) whether the agreement to arbitrate encompasses the underlying dispute. *Dean Witter Reynolds, Inc., v. Byrd*, 470 U.S. 213, 218 (1985); 9 U.S.C. §§ 2, 3; *General Dynamics Info. Tech., Inc.*, 714 F. Supp. 2d at 215 ("A party who attempts to compel arbitration must show that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope."). For the arbitration agreement to be binding, the party seeking to enforce the arbitration agreement is only required to provide "some minimal level of notice to the employee that statutory claims are subject to arbitration." *Ellerbee v. Gamestop, Inc.*, 604 F. Supp. 2d 349, 354 (D. Mass. 2009). The moving

11

party "is not required to show that plaintiffs actually understood their obligations under the Policy, only that they gave plaintiffs 'the information sufficient to put a reasonably prudent employee on adequate notice of the agreement to arbitrate.'" *Salvi v. TRW Auto. United States LLC*, 2012 U.S. Dist. LEXIS 10583, *13 (D. Mass. Jan. 30, 2012) (concluding that defendants met that standard where "Plaintiffs received a copy of the Policy and signed a form certifying that they reviewed the Policy, had an opportunity to ask questions about it, and understood how they were required to resolve disputes."). This is a relatively light burden of proof. *Ellerbee*, 604 F. Supp. 2d at 354 ("[A]n employer will be able to satisfy this relatively light burden by producing evidence demonstrating that the employee had actual notice of the agreement.").

In making the determination as to validity, the court should employ state law principles of contract interpretation. *DeLuca v. Bear Stearns & Co.*, 175 F. Supp. 2d 102, 107 (D. Mass. 2001) (citing *Perry v. Thomas*, 482 U.S. 483, 490 (1987)). Under general principles of Massachusetts contract law, a valid and enforceable contract contains: (1) an offer; (2) acceptance; and (3) consideration. *Campbell v. General Dynamics Gov't Sys. Corp.*, 321 F. Supp. 2d 142, 147 n.3 (D. Mass. 2004).

### 1. Thornton Was Notified of, and Accepted, Macy's Offer to Arbitrate.

All of the elements of contract formation are satisfied here. Macy's extended an offer to Thornton to arbitrate by way of the SIS Dispute Resolution Brochure, the Plan Document, and the Election Form, which Thornton electronically confirmed she received. The language contained in the 2007 Plan Document constitutes a contractual offer to arbitrate, explicitly stating "[a]ll Associates are automatically covered by all 4 steps of the program by taking or continuing a

job with the Company…. You are covered by Step 4 unless and until you exercise the option to exclude yourself from arbitration." (Ripak Decl., Ex. A, Plan Document at p. 5.)

Macy's communicated its offer to arbitrate to Thornton in several ways. Thornton expressly acknowledged receiving the SIS New Hire Brochure (and thus, also the Election Form and Plan Document contained therein). *Id.* at ¶ 23; and Exs. B, C & D. As noted *supra*, on September 20, 2007, Thornton electronically signed the Solutions InSTORE New Hire Online Acknowledgement Form, in which she acknowledged receiving a copy of the Solutions InSTORE Brochure and Plan Document and that she understood she had the option to opt out by returning the form within 30 days. *Id.* at ¶ 19 and Ex. D. Moreover, Thornton was also advised in New Hire Orientation, the SIS videotape, and the SIS informational posters displayed in the store that she would be covered by Step 4 arbitration unless she opted out within thirty days of being hired. *Id.* at ¶¶ 19 & 24-26 and Exs. E & F.

In determining whether Ms. Thornton accepted the offer to arbitrate, it does not matter whether she actually read these materials presented and/or given to her; all that matters is that they were provided to her. *Ellerbee v. Gamestop, Inc.*, 604 F. Supp. 2d 349, 354 (D. Mass. 2009) ("[I]f an employer has 'provided the rules [to an employee] but she did not read them, that would not save her.'"). The materials and the arbitration plan itself do not need to be explained to Thornton's satisfaction, and Macy's does not need to obtain her initials on a receipt or ensure that Thornton actually read the materials she was handed; instead, Macy's is only required to give Thornton the information sufficient to put a reasonably prudent employee on adequate notice of the agreement to arbitrate, which it did in this case. *See id*. at 355. Not only did Thornton sign an acknowledgement that she received the SIS Brochure and Plan Document, but

13

she, like all new employees, also received all the additional materials noted above and had access to information regarding Macy's arbitration program through posters in the store and on the employee website.

Massachusetts courts have found that "for a contract such as an arbitration agreement to be binding in the context of an at-will employment relationship, its acceptance by the employee need not be express and in writing." *Ellerbee*, 604 F. Supp. 2d at 354. "An employee need not sign for an employment manual, and assent to its terms may be shown if the employee 'manifested assent to it, or acknowledged understanding of its terms, or if the employer called special attention to the manual." *Id.* Thornton accepted Macy's offer after receiving notice of the arbitration agreement and electing to continue her employment and declining the opportunity to opt out of Step 4 Arbitration. *See generally Salvi v. TRW Auto. United States LLC*, 2012 U.S. Dist. LEXIS 10583, *4, (D. Mass. Jan. 30, 2012) (upholding mandatory dispute resolution policy, including arbitration, in employment contract that required an employee to use "[t]his policy…before an employee can pursue resolution of a covered dispute through the court system."); *Ellerbee*, 604 F. Supp. 2d at 352 (upholding mandatory dispute resolution policy, including arbitration, in employment contract as condition of continued employment); *Gonzalez v. GE Group Adm'rs, Inc.*, 321 F. Supp. 2d 165, 168 (D. Mass. 2004) (upholding mandatory arbitration program for employees where "Plaintiff agreed as a condition of her employment to resolve disputes of 'covered claims.'").

By choosing not to return the "opt-out" Election Form, despite the opportunity to do so (even though she knew the company would rely on her silence as assent as explained in the

Election Form), and by remaining employed after receiving notice of the arbitration agreement, Thornton manifested her acceptance of Macy's offer to arbitrate her employment-related claims

### 2. Sufficient Consideration Supports the Parties' Agreement.

"Under Massachusetts law, the requirement of consideration is satisfied if there is either a benefit to the promisor or a detriment to the promisee." *Gonzalez*, 321 F. Supp. 2d at 169 (citing *DeLuca v. Bear Stearns & Co.*, 175 F. Supp. 2d at 112). "The exchange of mutual promises provides adequate consideration for the enforcement of a contract." *DeLuca*, 175 F. Supp. 2d at 112. "The law is not concerned with the adequacy of the consideration, as long as it is 'valuable.'" *Id*.

With respect to agreements to arbitrate employment related disputes, consideration can be found in two different ways. First, "continued employment constitutes adequate consideration for the contract." *Ellerbee*, 604 F. Supp. 2d at 354. As with all other employees, by accepting or continuing employment with Macy's, Thornton agreed to Step 4-Arbitration as she did not choose to opt out. (Ripak Decl. at ¶ 9, Ex. A, p. 2.) Thus, the consideration for the agreement to arbitrate is derived from Thornton's continued employment with Macy's.

Second, "[c]onsideration can…be provided by a mutuality of promises to arbitrate." *Gonzalez v. GE Group Adm'rs, Inc.*, 321 F. Supp. 2d 165, 169 (D. Mass. 2004); *see also DeLuca v. Bear Stearns & Co.*, 175 F. Supp. 2d at 112 ("Consideration can also be provided by a mutuality of promises to arbitrate. Under Massachusetts law, the requirement of consideration is satisfied if there is either a benefit to the promisor or a detriment to the promisee."). Here, the 2007 Plan Document contains promises that mutually oblige Macy's and Thornton to arbitrate all employment disputes. (Ripak Decl. at ¶ 15, Ex. A, p. 6.) Macy's also has additional obligations

15

beyond the mutual promises to submit claims to arbitration. For example, the SIS Program obligates Macy's to pay arbitration costs beyond an employee's filing fee. *Id.* at ¶16; Ex. A, p. 14. Additionally, Macy's is obligated to reimburse an employee's legal fees up to $2,500. *Id.* at ¶ 16, Ex. A, p. 15. Therefore, sufficient consideration exists to support the agreement to arbitrate between Thornton and Macy's.

### 3. The Arbitration Agreement Encompasses Thornton's Claims.

Having established that the parties formed a valid and enforceable agreement to arbitrate by satisfying the general principles of Massachusetts contract law, the final issue is whether the agreement encompasses this dispute. *Dean Witter Reynolds,* 470 U.S. at 218; 9 U.S.C. §§ 2, 3. "While a court may not 'read out of an arbitration clause an explicit limit upon the scope of that clause' to which the parties have agreed, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself, or an allegation of waiver, delay, or a like defense to arbitrability.'" *General Dynamics Info. Tech., Inc. v. Wireless Props., LLC*, 714 F. Supp. 2d 211, 215 (D. Mass. 2010). A court may not deny a party's request to arbitrate an issue "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).

Here, the arbitration agreement is very broad and, subject to certain exceptions not relevant to the present matter, states that:

> <u>all employment-related legal disputes</u>, controversies or claims arising out of, or relating to, employment or cessation of employment, whether arising under federal, state or local decisional or statutory law ("Employment-Related Claims"), shall be settled exclusively by final and binding arbitration.

(Ripak Decl., ¶ 15, Ex. A, p. 6) (emphasis added).  Moreover, arbitration agreements are to be read liberally to effectuate their purpose and "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.* (1983) 460 U.S. 1, 24-5 (1983).

Therefore, it is clear that Thornton's alleged claims against Macy's—discrimination and retaliation—are encompassed by the scope of the arbitration clause.  Because the facts and issues alleged in the Complaint arise out of and relate directly to Thornton's employment, and because her claims are of the type enumerated within the scope of the Program provisions, her claims are covered by the SIS program and its arbitration provisions.

### C. The SIS Program Contains Sufficient Safeguard to Protect Thornton's Ability to Have her Claims Decided Fairly and Efficiently.

The SIS program includes numerous safeguards to protect employees who have agreed to the terms of arbitration under the program, such as: (a) selection of a neutral arbitrator; (b) the right to conduct more than minimal discovery; (c) the recovery of the same relief available in a court of law, including attorneys' fees and costs; (d) the issuance of a written arbitration award; and (e) the minimal costs to the employee (capped at $125).  (Ripak Decl. ¶ 16.)

Additionally, unlike some arbitration programs, the SIS Program does not restrict the applicable statute of limitations; instead any limits are set by the relevant law.  *Id*.  Also, if the employee consults with, or is represented by, an attorney for the arbitration, the company reimburses her legal fees up to $2,500 over a continuously rolling 12-month period.  *Id*.  If the employee is not represented by an attorney, the company will reimburse the employee for incidental costs up to $500 over the same rolling period. *Id.* Thornton likewise, should she succeed in arbitration, can recover the same remedies available to her in a court of law. *Id*.

17

### D. This Action Should Be Dismissed Pursuant to the Parties' Agreement.

The parties' arbitration agreement also provides that "[i]f a party files a lawsuit in court to resolve claims subject to arbitration, both agree that the court shall dismiss the lawsuit and require the claim to be resolved through the Solutions InSTORE program." (Ripak Decl., Ex. A, p. 7.) If the Court finds the arbitration agreement to be valid and enforceable, Macy's respectfully requests that this Court dismiss the action—pursuant to the terms of the arbitration agreement—and allow Thornton to pursue her claims through arbitration. *Id.* By electing to participate in Step 4-Arbitration, Thornton agreed to this provision and dismissal is appropriate.

In the alternative, Macy's submits that, at a minimum, this Court should stay this litigation while this motion is pending and until resolution of the arbitration. 9 U.S.C. § 3 (in suit involving "any issue referable to arbitration under an agreement" court shall "stay the trial of the action until such arbitration has been had"). A stay will also avoid wasting the efforts and resources of the Court and the parties.

### IV. CONCLUSION

WHEREFORE, Defendant Macy's Retail Holdings, LLC, respectfully requests that the Court enforce the parties' agreement to arbitrate and compel Plaintiff Ashkhen Thornton to arbitrate her claims against Macy's. In addition, Macy's requests that the Court dismiss the pending action or, in the alternative, stay the proceedings until the arbitration is completed.

Dated: April 13, 2021

Respectfully submitted by,

Defendant,

MACY'S RETAIL HOLDINGS, LLC

By its attorneys,

*/s/ Monvan Hu*
Holly English, Esq. (BBO# 542225)
Kerrie R. Heslin, Esq. (admitted *pro hac vice*)
Monvan Hu, Esq. (admitted *pro hac vice*)
NUKK-FREEMAN & CERRA, P.C.
26 Main Street, Suite 202
Chatham, NJ 07928
Phone: (973) 665-9100
Fax: (973) 665-9101
henglish@nfclegal.com
kheslin@nfclegal.com
mhu@nfclegal.com

## **CERTIFICATE OF SERVICE**

I hereby certify that the attached Memorandum of Law in Support of Macy's Motion to Compel Arbitration was filed through the CM/ECF system and was caused to be served electronically to the following persons on April 13, 2021 via electronic mail and overnight delivery:

Ashkhen V. Thornton
39 Prospect Terrace
Leominster, MA 01453
ashkhenthornton@gmail.com
*Plaintiff Pro Se*

                              NUKK-FREEMAN & CERRA, P.C.
                              *Attorneys for Defendant Macy's Retail
                              Holdings, LLC*


                              /s/ *Monvan Hu*
                              Monvan Hu